## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

CARBON SIX BARRELS, LLC

VERSUS

PROOF RESEARCH, INC.

CIVIL ACTION

22-CV-90-SDD-RLB

## <u>RULING</u>

Before the Court are the *Motion to Dismiss for Lack of Personal Jurisdiction*, *Motion to Transfer Case,* and *Motion to Dismiss for Failure to State a Claim*[1] filed by Defendant, Proof Research, Inc. ("Proof"). Plaintiff, Carbon Six Barrels, LLC ("Carbon Six") filed an *Opposition,*[2] to which Proof filed a *Reply*.[3] For the following reasons, the *Motion to Dismiss for Lack of Personal Jurisdiction* and *Motion to Transfer* are denied. The *Motion to Dismiss for Failure to State a Claim* is granted.

## I.      BACKGROUND

This case follows a trademark dispute between Proof and Carbon Six. The following facts are alleged by Carbon Six: Proof is Delaware corporation with its principal place of business in Montana.[4] Carbon Six is a Louisiana limited liability company.[5] Sometime before 2012, Proof began making carbon fiber gun barrels with a unique look, described as a mottled finish.[6] In 2013, it successfully registered this look as a trade dress with the US Patent and Trademark Office ("The Registration").[7] In early 2017, Carbon Six

---

[1] Rec. Doc. No. 8.
[2] Rec. Doc. No. 19.
[3] Rec. Doc. No. 22.
[4] Rec. Doc. No. 1, p. 1.
[5] *Id.*
[6] *Id.*, p. 4.
[7] *Id.*, p. 5.

began making carbon fiber barrels "with a continuous-filament carbon fiber and epoxy resin composite."[8] It bought barrel blanks from its sister company, McGowen Precision Barrels, a Montana limited liability entity.[9] Both Carbon Six and McGowen are solely owned by Ronald Duplessis, a Louisiana resident.[10]

On June 2, 2016, Proof sent a cease-and-desist letter to Carbon Six at its address in Baker, Louisiana.[11] The letter informed Carbon Six that it was infringing on the Registration and threatened litigation if Carbon Six did not cease its activities.[12] In response, counsel for Carbon Six stated that the trade dress claimed by Proof was a functional feature, which would not be protected.[13]

In December 2017, Proof sued McGowen, not Carbon Six, for trademark infringement in the District of Montana ("Montana Litigation").[14] McGowen immediately responded by filing a petition to cancel the Registration before the Trademark Trial and Appeal Board ("TTAB").[15] The Montana Litigation was stayed pending the outcome of the cancellation proceeding ("Cancellation Proceeding").[16] During the Cancellation Proceeding, Proof allegedly made defamatory statements about Carbon Six.[17] In May 2021, after years of litigation, the TTAB cancelled Proof's Registration.[18]

Things did not stop there. On February 6, 2022, Carbon Six brought the instant action alleging that Proof engaged in 1) defamation, 2) unfair trade practices in violation

---

[8] *Id.*, p. 2.
[9] *Id.*
[10] *Id.*
[11] *Id.*, p. 5.
[12] *Id.*
[13] *Id.*
[14] *Id.*, p. 2.
[15] *Id.*, p. 3.
[16] *Id.*
[17] *Id.*, p. 10.
[18] *Id.*, p. 3.

of the Louisiana Unfair Trade Practices Act ("LUTPA"), and 3) fraud in violation of 15 U.S.C. § 1120.[19] McGowen filed a similar suit against Proof in the District of Montana, though with different state law claims.[20]

Proof now urges dismissal. First, Proof argues that it lacks sufficient contacts with this forum to support personal jurisdiction and that the Court should either dismiss the case or transfer it to the District of Montana.[21] Should the Court deny transfer, Proof contends that Carbon Six's claims are time-barred and fail the federal pleading standard.[22] The Court will address these arguments in turn.

## II.    LAW AND ANALYSIS

### A.  Motion to Dismiss for Lack of Personal Jurisdiction

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits dismissal of a suit for lack of personal jurisdiction. "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists."[23] The plaintiff is not required to establish jurisdiction by a preponderance of the evidence, however; a *prima facie* showing is sufficient.[24] "When considering a motion to dismiss for lack of personal jurisdiction, the Fifth Circuit directs courts to accept plaintiff's allegations as true, other than those which are controverted by the defendant or are simply conclusory statements, and to resolve conflicts between the parties' facts in plaintiff's favor."[25]

---

[19] *Id.*, p. 8-11.
[20] Rec. Doc. No. 19, p. 12.
[21] Rec. Doc. No. 8-1, p. 1.
[22] *Id.*, p. 17-24.
[23] *Luv N' care, Ltd. v. Insta-Mix, Inc.,* 438 F.3d 465, 469 (5th Cir. 2006).
[24] *Id.*
[25] *S. Marsh Collection, LLC v. C.J. Printing, Inc.*, No. 14-495, 2015 WL 331919, at *1 (M.D. La. Jan. 26, 2015) (citing *Panda Brandywine v. Potomac,* 253 F.3d 865, 868 (5th Cir.2001)).

A court may exercise personal jurisdiction over a nonresident-defendant only if the forum state's long-arm statute confers personal jurisdiction and the exercise of personal jurisdiction does not exceed the boundaries of due process.[26] The long-arm statute of Louisiana, the forum state here, authorizes the exercise of personal jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment.[27] A court's exercise of personal jurisdiction over a nonresident-defendant comports with the due process clause when a defendant has established "minimum contacts" with the forum state such that imposing a judgment would not "offend traditional notions of fair play and substantial justice."[28] The first inquiry, into "minimum contacts," is fact intensive and no one element is decisive; rather, the touchstone is whether the defendant purposely directed his activities towards the forum state, such that he could reasonably foresee being haled into court there.[29]

Personal jurisdiction may be divided into specific jurisdiction and general jurisdiction.[30] General jurisdiction exists "when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial."[31] Except in exceptional circumstances, courts have general jurisdiction over a business only if the business is incorporated in or has its principal place of business in that forum state.[32] Specific jurisdiction exists if a nonresident-defendant has "purposefully

---

[26] *Dykes v. Maverick Motion Picture Grp., LLC,* No. 08–536–JJB–CN, 2011 WL 900276, at *4 (M.D. La. Mar. 14, 2011).
[27] *Id.*
[28] *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).
[29] *Luv N' Care Ltd. v. Insta–Mix, Inc.,* 438 F.3d 465, 470 (5th Cir. 2006), quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).
[30] *Alpine View Co. v. Atlas Copco, A.B.,* 205 F.3d 208, 215 (5th Cir. 2000).
[31] *Springboards to Educ., Inc. v. Hamilton Cty. Read 20,* No. 3:16-CV-2509-B, 2017 WL 3023489, at *2 (N.D. Tex. July 14, 2017)(quoting *Marathon Oil Co. v. Ruhrgas,* 182 F.3d 291, 295 (5th Cir. 1999)).
[32] *BNSF Ry. Co. v. Tyrrell,* 137 S.Ct. 1549, 1558 (2017).

directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities."[33] That is, for a court to exercise specific jurisdiction (1) the defendant must have directed activities or purposely availed itself of the privileges of conducting activities in the forum state; (2) the cause of action must arise out of the defendants forum-related contacts; and (3) the court's exercise of jurisdiction must be fair and reasonable.[34]

    1) <u>Analysis</u>

The Court finds that general jurisdiction is lacking over Proof. Proof is not incorporated in Louisiana and does not maintain its principal place of business here. Indeed, in its *Opposition*,[35] Carbon Six only addresses specific jurisdiction. Thus, Carbon Six must prove specific jurisdiction or face dismissal.

Proof argues that specific jurisdiction is lacking because its sole contact with Louisiana amounts to a single cease-and-desist letter, which it sent to Carbon in Louisiana to stop its infringing activity there. Proof argues that such conduct, without more, does not show purposeful availment of the benefits and protections of Louisiana. Carbon Six argues that, by sending the letter to Louisiana, Proof committed an intentional act towards Louisiana, such that Proof could "reasonably anticipate being haled into court" there to answer for the truth of the statements it made in the letter.[36]

The Fifth Circuit has held that a single cease-and-desist letter may be sufficient to establish minimum contacts with a forum state.[37] In *Ferris v. SGS-Thomson Micro-Elecs.*,

---

[33] *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985).
[34] *Seiferth v. Helicopteros Atuneros, Inc.,* 472 F.3d 266, 271 (5th Cir. 2006).
[35] Rec. Doc. No. 19.
[36] *Id.*, p. 6 (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984).
[37] *See SGS-Thomson Micro-Elecs. v. Ferris*, 55 F.3d 632, 1995 WL 313932, at *1 (5th Cir. 1995) (unpublished but precedential opinion under Fifth Circuit Rule 47.5.3.); *Def. Distributed v. Grewal,* 971 F.3d 485, 488 (5th Cir. 2020), *cert. denied*, 141 S.Ct. 1736 (2021).

*Inc.*, the Fifth Circuit found personal jurisdiction existed over a California resident who sent a letter to the plaintiff, located in Texas, alleging copyright violations and threatening litigation if the company did not settle.[38] The plaintiff filed suit in the Northern District of Texas asserting that the defendant's conduct amounted to unfair competition, tortious harassment, extortion, and defamation.[39] In finding personal jurisdiction, the Fifth Circuit noted that the "lawsuit, rather foreseeably, arose out of [the letter] accusing it of certain violations and threatening litigation."[40] The Fifth Circuit also noted that the defendant "purposefully directed his activities into the forum in a manner causing reasonably foreseeable injuries in the forum to a forum resident."[41]

Of course, a single cease-and-desist letter is not always sufficient to establish jurisdiction over an out-of-state resident.[42] In *Stroman Realty, Inc. v. Wercinski*, an Arizona official sent a letter to Stroman, a Texas brokerage company, demanding that it cease its Arizona-related brokerage activities. Stroman filed a complaint in the Southern District of Texas seeking declaratory and injunctive relief against the Commissioner. The Fifth Circuit found that personal jurisdiction did not exist over the Arizona official, noting that the plaintiff "chose to market Arizona properties and transact business with Arizona residents" and "Arizona is simply attempting to uniformly apply its laws."[43] The Court declined to "endorse an interpretation of personal jurisdiction under which the Commissioner—and, for that matter, any state official seeking to enforce her state's

---

[38] *SGS*, 55 F.3d at *1.
[39] *Id.*
[40] *Id.* at *3, n. 5.
[41] *Id.*
[42] *See Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 485-86 (5th Cir. 2008).
[43] *Id.*

6

laws—could potentially be subjected to suit in any state where the validity of her state's laws were in question."[44]

Recently, however, the Fifth Circuit distinguished *Stroman* in *Def. Distributed v. Grewal*.[45] There, a New Jersey official sent a cease-and-desist letter to a Texas company, which made information related to the 3D printing of firearms. The letter demanded that the company cease publication of its materials. The Texas company filed suit in the Western District of Texas, alleging several state law claims including tortious interference. At the outset, the Fifth Circuit noted that the case bore factual similarities to *Stroman* as the "totality" of the defendant's contacts with Texas involved a single cease-and-desist order and the New Jersey official's purpose in issuing the cease-and-desist letter "ostensibly was to enforce New Jersey public nuisance and negligence laws."[46]

However, the Fifth Circuit ultimately found that *Stroman* was distinguishable in two key respects. First, many of the plaintiffs' claims were based directly on the cease-and-desist letter, which "alone gave rise to distinct tort causes of action."[47] Second, unlike the Arizona official in *Stroman*, who merely requested that Stroman acquire a license before doing business in the state, the New jersey official did not cabin his request to commanding that the Texas Company stop publishing materials to New Jersey residents. He instead demanded that the plaintiffs cease publication of their materials generally. The Fifth Circuit found that the defendant's intent was "to crush [the plaintiff's] operations and not simply limit the dissemination of digital files in New Jersey."[48] The official "knew that

---

[44] *Id.*
[45] 971 F.3d at 488.
[46] *Id.* at 491.
[47] *Id.* at 495.
[48] *Id.* at 493.

the cease-and-desist letter would 'have a potentially devastating impact' on the plaintiffs—and, by extension, those who wished to benefit from the plaintiffs' activities, including Texas residents."[49]

In sum, Fifth Circuit caselaw consistently shows that a single cease-and-desist letter *may* be sufficient to establish personal jurisdiction over the sender and a bright line rule on this issue is not appropriate. Specifically, *SGS* and *Grewal* make clear that personal jurisdiction exists over an out-of-state defendant who sends a cease-and-desist letter to an in-state plaintiff where either (1) the plaintiff's claims are based on injuries stemming directly from the letter, and/or (2) the letter seeks to completely proscribe plaintiff from performing an activity nationwide or in the forum state.[50]

Both of those elements are present here. First, like in *Grewal*, "many of the plaintiff['s] claims are based on [the] cease-and-desist letter."[51] Indeed, the letter at issue is, by itself, reason for bringing the instant defamation claim since Carbon Six alleges that Proof knew that its trademark was invalid when it sent the letter. The letter is also central to the unfair and deceptive acts alleged by Carbon Six in its LUTPA claim.

Second, through the letter, Proof sought to crush Carbon Six's operations—production of carbon fiber barrels—in Louisiana and elsewhere in the US, not simply in Montana. Thus, unlike the Arizona official in *Stroman*, who merely sought to stop a Texas company from doing business in Arizona, Proof sought to enjoin Carbon Six from performing business nationwide and in its home state. Certainly, Proof knew that the letter would "have a potentially devastating impact" on Carbon Six—and, by extension, those

---

[49] *Id.* at 495.
[50] *SGS*, 55 F.3d 632 at *1-2; *Grewal*, 971 F.3d 485 at 492.
[51] *Grewal, 971 F.3d 485 at 492.*

who wished to benefit from the plaintiff's activities, including Louisiana residents.[52]

Accordingly, the Court finds that Proof has sufficient minimum contacts with Louisiana to

subject itself to Louisiana courts.

Next, the Court finds that exercising jurisdiction would not offend traditional notions

of fair play and substantial justice. Proof argues that it faces a substantial burden if this

suit is allowed to proceed because its primary location is in Montana. It faces a similar

suit in Montana and witnesses will be forced to travel from Montana to Louisiana for the

same testimony, testifying twice as to the exact same matters. However, "once minimum

contacts are established, the interests of the forum and the plaintiff justify even large

burdens on the defendant."[53] Just as Proof has an interest in litigating this case in

Montana, Carbon Six has in interest in securing relief in Louisiana, where it is located and

suffered damages. Proof's burden in responding to this litigation is not atypical of the

financial and logistical burdens faced by most defendants in cases brought under diversity

jurisdiction. Carbon Six assures the Court that it did not file suit in Louisiana for improper

reasons, as alleged by Proof, "but because it is domiciled here, it is familiar with the laws

in its home state and Louisiana is the most convenient forum to it."[54]

In the end, "[q]uestions of personal jurisdiction typically do not lend themselves to

broad generalizations."[55] Rather, they "require an understanding of particular facts and

an application of general principles."[56] This case is distinguishable from *Stroman* and on

par with *Grewal*—thus, jurisdiction over Proof is proper.

---

[52] *See Grewal, 971 F.3d 485 at 495.*
[53] *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).
[54] Rec. Doc. No. 19, p. 9.
[55] *Grewal*, 971 F.3d 485 at 496.
[56] *Id*. at 497.

B. Motion to Transfer Case

As alternative relief, Proof requests transfer to the District of Montana. 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Transfer of venue under § 1404(a) is at the Court's discretion, considering "'all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'"[57]

This determination turns on a number of private and public interest factors, none of which is given dispositive weight. The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.[58]

A plaintiff's original choice of forum is entitled to some deference, which dictates that the moving party must "demonstrate[ ] that the transferee venue is clearly more convenient."[59] But, while a plaintiff's choice of forum "should be respected" unless "the

---

[57] *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (quoting 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3847, at 370 (1986)).

[58] *Berg v. Akorn, Inc.,* No. CV 17-00350-BAJ-RLB, 2017 WL 2864852, at *2 (M.D. La. July 5, 2017)(quoting *In re Volkswagen AG*, 371 F.3d at 201, 203).

[59] *In re Volkswagen of America, Inc.,* 545 F.3d 304, 315 (5th Cir. 2008).

transferee venue is clearly more convenient," Plaintiff's "choice of forum ... is not an independent factor within ... the § 1404(a) analysis."[60]

1) Analysis

The Court finds that transfer to the District of Montana is improper. Although the District of Montana is clearly a district in which Carbon Six's claims could have been brought,[61] transfer would not better serve the convenience of the parties and the interests of justice.

First, the private interest factors do not weigh in favor of either party. Proof does not address "the ease of access to sources of proof," and it appears that a substantial amount of evidence and information has already been shared by the parties in the Cancellation Proceeding.[62] Proof asserts that its witnesses are located in Montana and Ohio and "the costs of transporting witnesses from Montana and Ohio to Louisiana will be significant."[63] But this argument cuts both ways. Carbon Six's employees are located in Louisiana and would be equally inconvenienced by travelling to Montana.

Second, the public interest factors weigh against transfer. Proof argues that "if the case is transferred and consolidated . . . there will not be duplicative litigation (and its attendant costs) in both Louisiana and Montana."[64] However, transfer and consolidation are two separate questions. Even if this Court granted transfer to the District of Montana, it cannot be sure that the transferee court would consolidate the related litigation. In fact, consolidation seems unlikely since Carbon Six primarily raises claims under Louisiana

---

[60] *Id.* at 314 n.10, 315.
[61] Courts have general personal jurisdiction over a business if the business is incorporated in or has its principal place of business in the forum state. *BNSF Ry. Co.*, 137 S.Ct. at 1558. It is undisputed that Proof maintains its principal place of business in Montana.
[62] Rec. Doc. No. 19, p. 10.
[63] Rec. Doc. No. 8-1, p. 22.
[64] Rec. Doc. No. 22, p. 6.

law that are distinct from those raised by McGowen under Montana law. Ultimately, any public benefit based on consolidation is purely speculative and entitled to little consideration.

To the contrary, there is obvious public benefit in denying transfer because this Court is better suited than Montana federal courts to adjudicate Carbon Six's state law claims. Remaining in this district avoids unnecessary problems arising from the application of foreign law. Louisiana residents also have a unique local interest in this litigation since Proof's alleged unfair trade practices harmed not only Carbon Six's business interests, but Louisiana residents who benefited from that business. Last, Proof is correct in arguing that transfer to Montana would be more convenient for non-party witnesses who are likely to be called in both the McGowen suit and this one. However, Proof fails to offer any specifics about the number or nature of these witnesses. Ultimately, the Court finds that this consideration is outweighed by the public's interest in having Louisiana federal courts adjudicate Louisiana law and decide local interests close to home.

Overall, the Court finds that the relevant factors do not favor transfer to the District of Montana. Accordingly, transfer to the District of Montana is denied.

C.  Motion to Dismiss for Failure to State a Claim

Finally, Proof argues that Carbon's suit should be dismissed for failure to state a claim under Rule 12(b)(6). When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[65] The Court may consider "the complaint, its proper attachments, 'documents

---

[65] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).

incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[66] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[67]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[68] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[69] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[70] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[71] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[72] "[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[73]

---

[66] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v, Portfolio Equity, Inc.*, 540 F.3d 333. 338 (5th Cir. 2008).

[67] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).

[68] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) (hereinafter *Twombly*).

[69] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (hereinafter "*Iqbal*").

[70] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

[71] *Id.*

[72] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

[73] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

Through its 12(b)(6) motion, Proof argues that Carbon Six's claims are time-barred. A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.[74] The Court will address the timeliness of each claim in turn.

    1)  <u>Carbon Six's Defamation Claim is Untimely</u>

Under Louisiana law, "[d]efamation is a delictual action subject to a one-year liberative prescription."[75] "[P]rescription begins to run from the date of the publication of the allegedly defamatory remarks."[76] Here, Proof made its last allegedly defamatory remark on November 21, 2020, when it filed its main trial brief in the Cancellation Proceeding.[77] This litigation was filed more than one year later.

Carbon six argues that the prescriptive period did not run until the end of the Cancellation Proceeding and Montana Litigation because, under Louisiana law, an action on defamation arising out of allegations made in judicial proceedings cannot be brought until the proceedings have terminated.[78] This is so the underlying proceedings can continue without risk of interference by a defamation claim.[79]

This argument is unavailing, however, because such an exception only applies to "allegations made in judicial proceedings and *against a party to those proceedings*."[80]

---

[74] *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

[75] *Painter v. Suire*, No. 12-CV-00511-SDD-SCR, 2014 WL 1091753, at *3 (M.D. La. Mar.18, 2014) (quotation marks omitted).

[76] *Alexander v. Times-Picayune L.L.C.*, 2016-1134 (La. App. 4 Cir 05/31/17), 221 So. 3d 198, 203.

[77] Carbon Six acknowledges in Rec. Doc. No. 19, p. 15-16, that Proof filed its main trial brief on November 21, 2020, although it failed to plead this fact in its complaint. Nevertheless, as discussed herein, even amending its complaint to include this fact would not make its claim timely.

[78] *See Simpson v. Perry*, 2003-0116 (La. App. 1 Cir 7/14/04), 887 So. 2d 14, 16.

[79] *Id.*

[80] *Id.* (emphasis added).

Carbon Six was not a party to either the Trademark Litigation or the Cancellation Proceeding. Those cases were solely between McGowen and Proof. Accordingly, the one-year prescriptive period began to run, not from the end of those proceedings, but from the date of the last defamatory remark that Carbon Six alleges—which is November 21, 2020, the date Proof filed its main trial brief in the cancellation proceeding. Carbon Six filed this litigation on February 9, 2022, more than one year later. Accordingly, its defamation claim is prescribed by Louisiana law.

2) Carbon Six's LUTPA Claim is Untimely

LUTPA liability is subject to a one-year prescriptive period.[81] Carbon Six argues that Proof violated LUTPA by:

> sending the cease-and-desist letters, fraudulently obtaining and renewing the trademark, falsely accusing McGowen of trademark infringement, making defamatory statements and filing the [Trademark Litigation] and attempting to enjoin McGowen and Carbon Six from manufacturing, selling and distributing their barrels.[82]

However, regardless of timing, "falsely accusing McGowen of trademark infringement" is not a claim for which Carbon Six can recover. It is well settled that "[a] sister corporation cannot sue on behalf of another sister corporation."[83] Further, the Montana Litigation cannot support Carbon Six's LUTPA claim. Carbon Six was never a party to that litigation. Moreover, Louisiana courts have held that filing a lawsuit, even a meritless one, is not an unfair trade practice under LUTPA.[84]

The other actions fall outside the one-year prescriptive period. The cease-and-

---

[81] La. Rev. Stat. Ann. § 51:1409.
[82] Rec. Doc. No. 1, p. 49.
[83] *Construtodo, S.A. de C.V. v. Conficasa Holdings, Inc.*, No. H-12-3026, 2014 WL 427114, at *4 (S.D. Tex. Jan. 31, 2014).
[84] *GR Rests., LLC v. Suzanne Savoy Santillo, LLC*, 18-637 (La. App. 3 Cir 06/12/19), 275 So. 3d 50, 61.

desist letter was sent on June 2, 2016; Proof obtained and renewed its trademark in 2013

and 2018, respectively; and, as discussed above, the last defamatory remark alleged by

Carbon Six occurred on November 21, 2020. Thus, Plaintiff's claim is time-barred on the

face of the petition and must be dismissed unless Plaintiff can show that the prescriptive

period was suspended or interrupted.[85]

Carbon Six advances the "continuing tort" doctrine to avoid dismissal on

prescription. Under that doctrine, prescription may be suspended when a defendant's

violations are continuing.[86] The operating cause of the injury must be "a continuous one

which results in continuous damages."[87] Carbon Six contends that Proof defended the

validity of its trademark in the Cancellation Proceeding for over three years and that the

prescriptive period continued to run until the Registration was cancelled on May 20, 2021.

However, this argument is unavailing for two reasons. First, it is doubtful that

Proof's conduct in defending itself in the Cancellation Proceeding could give rise to

LUTPA liability under Louisiana law.[88] As discussed above, litigating a lawsuit is generally

not an unfair trade practice under LUTPA.[89] Second, even if liability could be established

on that basis, "a continuing tort is occasioned by unlawful *acts*, not the continuation of the

ill effects of an original wrongful act."[90] Proof's last "act" in the Cancellation Proceeding

occurred on November 21, 2020, more than one year before the filing of this lawsuit.

Carbon Six also argues that Proof committed a continuing tort by failing to amend

---

[85] *Thomas v. State Employees Group Benefits Program,* 934 So.2d 753, 758 (La.App. 1 Cir. 3/24/06) (citing *Jonise v. Bologna Brothers,* 820 So.2d 460, 464 (La. 6/21/02)).
[86] *Crump v. Sabine River Authority,* 737 So.2d 720, 726 (La. 6/29/99).
[87] *Id.*
[88] *See GR Rests., LLC*, 18-637 (La. App. 3 Cir 06/12/19), 275 So. 3d at 61.
[89] *See id.*
[90] *Trinity Medical Services, LLC v. Merge Healthcare Solutions, Inc.*, No. 17-592, 2018 WL 3748399, at *9 (M.D. La. Aug. 7, 2018) (alterations omitted; emphasis added).

the fraudulent statements in its trademark application. Carbon Six argues that Proof "never took any action to correct its fraudulently filed application for its trademark" and prescription was therefore suspended for every day that it failed to do so.[91]

However, Louisiana courts have long recognized that a continuing failure to remedy a tort is not a continuation of the underlying tortious action.[92] As the Louisiana Supreme Court has observed, "[t]he breach of a duty to right an initial wrong simply cannot be a continuing wrong that suspends the running of prescription, as that is the purpose of every lawsuit and the obligation of every tortfeasor."[93] For example, in *Hogg,* the plaintiffs' land was contaminated by the migration of gasoline from formerly leaking underground storage tanks located on neighboring property.[94] At the time of the suit, the leaked gasoline remained on the plaintiffs' property and plaintiffs contended that the presence of the gasoline on their property constituted a continuing trespass, so that prescription would not begin to run until the gasoline was removed.[95] The Louisiana Supreme Court disagreed, holding that the operating cause of the plaintiffs' injuries was the leaking underground storage tanks and thus prescription began to run when the tanks were removed and the leaking stopped.[96]

*Crump v. Sabine River Authority* is also illustrative.[97] There, the plaintiff contended that a canal built on neighboring property caused a bayou on her land to partially dry up.[98] The Louisiana Supreme Court held that the continued presence of the canal was not a

---

[91] Rec. Doc. No. 19, p. 22.
[92] *Crump v. Sabine River Authority*, 737 So.2d 720 (La. 1999); *Hogg v. Chevron USA, Inc.*, 45 So.3d 991, 1003-4 (La. 2010).
[93] *Hogg,* 45 So.3d at 1007 (citing *Crump,* 737 So.2d at 729).
[94] *Id.* at 995.
[95] *Id.* at 996.
[96] *Id.* at 1006.
[97] *Crump,* 737 So.2d at 723.
[98] *Id.* at 723-24.

continuing tort: "[T]he actual digging of the canal was the operating cause of the injury" and the "continued presence of the canal and the consequent diversion of water . . . [were] simply the *continuing ill effects* arising from a single tortious act."[99]

Here, Carbon six maintains that it was continuously injured by Proof's fraudulently obtained trademark. But the "operating cause" of that injury would be Proof's fraudulent conduct in procuring and renewing the Registration. Like the pool of gasoline in *Hogg* and the canal in *Crump*, Proof's ongoing Registration was merely a continuing *ill effect* arising from the company's alleged fraud in procuring the Registration. Like every tortfeasor, Proof retained a duty to correct its alleged tortfeasance, but Carbon Six, like every plaintiff, was obliged to timely bring suit to compel such an action.[100]

Resisting this reasoning, Carbon Six cites several state appellate cases for the proposition that, where tortious conduct involves the violation of a statute, prescription does not begin to run until the tortfeasor is in compliance with the statute.[101] For example, in *Fox v. Dupree*, the defendants alleged that the plaintiff continuously failed to comply with the disclosure requirements of the Louisiana Loan Broker's statute.[102] The Louisiana First Circuit found that the prescriptive period "could not even begin to run until a loan broker complied with the law because every day he is in violation gives rise to a new right of action for an unfair trade practice."[103] Likewise, in *Capitol House*, where the plaintiff alleged that the defendants had continued to withhold information in violation of the Louisiana Riverboat Act, the First Circuit found that that the prescriptive period did not

---

[99] *Id.* at 727-28 (emphasis added).
[100] *Hogg,* 45 So.3d at 1007 (citing *Crump,* 737 So.2d at 729).
[101] *See Fox v. Dupree,* 633 So.2d 612, 614 (La. App. 1 Cir. 1993), *writ denied,* 94–0296 (La. 3/25/94), 635 So.2d 233; *Capitol House Preservation Co., LLC v. Perryman Consultants, Inc.*, 98-2216 (La. App. 1 Cir. 11/5/99) 745 So.2d 1194, *writ denied*, 1999-3446 (La. 2/11/00) 754 So.2d 937.
[102] *Fox*, 633 So.2d at 614.
[103] *Id.*

begin to run as long as the defendants continued to withhold that information.[104]

However, the Court declines to follow *Fox and Capitol House*. Those appellate cases predate and are generally inconsistent with the Supreme Court's holding in *Hogg*.[105] By conflating action with inaction, *Fox* and *Capitol House* chafe against the general principles in *Hogg* that a continuing tort requires continuing *conduct* and that failure to remedy a tort is not a continuation of the initial tortious act.[106]

Ultimately, Louisiana law does not support the broad proposition that LUTPA's prescriptive period is suspended as long as a perpetrator of fraud fails to correct his false statements. Such an exception would swallow the rule, eliminating any prescriptive period as to fraud except in those rare instances where a fraudster has willingly disclosed his fraudulent conduct. All of Proof's allegedly fraudulent statements were made and known to Carbon Six more than one year before the filing of this lawsuit. Accordingly, Carbon Six's LUTPA claim is time-barred.

3)  Carbon Six's Federal Fraud Claim is Untimely

Carbon Six alleges that Proof fraudulently procured its trademark in violation of 15 U.S.C. § 1120, which is part of the Lanham Act. "The Lanham Act does not contain a statute of limitations," and so "courts will look to the relevant forum state statute which best effectuates the federal policy at issue."[107] For Lanham Act claims, "Louisiana federal courts routinely apply the prescriptive period found in [LUTPA], which is one year."[108]

---

[104] *Capitol House*, 745 So.2d at 1197.
[105] The Third Circuit has declined to follow *Fox* and *Capitol House*. *See Glod v. Baker*, 04-1483 (La. App. 3 Cir. 3/23/05) 899 So.2d 642, 649.
[106] *See Hogg*, 45 So.3d at 1007.
[107] *Synergy Mgmt., LLC v. WDM, Inc.*, No. 20-850-SDD-EWD, 2021 WL 3057411, at *3 (M.D. La. July 20, 2021).
[108] *Id.*

Under 15 U.S.C. § 1120, a claim accrues when the registration is procured.[109] Here, Proof's Registration was obtained in 2013 and renewed in 2018. Both procurements are outside LUTPA's one-year prescriptive period. Carbon Six again makes a continuing tort argument but, for the reasons discussed above, that argument must fail. Accordingly, Carbon Six's federal fraud claim is time-barred.

Finally, Proof argues that all of Carbon Six's claims fail the federal pleading standard under *Iqbal* and *Twombly*. However, because the Court is dismissing all claims as time barred, the Court declines to reach this question.

### III.    CONCLUSION

For the foregoing reasons, Proof's *Motion to Dismiss for Lack of Personal Jurisdiction*[110] and *Motion to Transfer Case*[111] are hereby DENIED. Proof's *Motion to Dismiss for Failure to State a Claim*[112] is hereby GRANTED and Plaintiff's claims DISMISSED WITH PREJUDICE.[113]

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>November 4, 2022</u>.

_____

**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[109] *See Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1396 (9th Cir. 1993); *Gaudreau v. Am. Promotional Events, Inc.*, 511 F.Supp.2d 152, 160 (D.D.C. 2007).
[110] Rec. Doc. No. 8.
[111] *Id.*
[112] *Id.*
[113] "The trial court acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss." *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003). Carbon Six's claims are time-barred and it would be futile to grant Carbon Six leave to add more details to the complaint.